UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,                    CRIMINAL NO. 06-189 (PAM/JSM)

      Plaintiff,

v.                                                              REPORT AND RECOMMENDATION

JANICE MAE STEPP,

      Defendant.

JANIE S. MAYERON, United States Magistrate Judge

The above matter came on before the undersigned upon defendant Janice Mae Stepp's Motion to Suppress Evidence Seized Pursuant to an Invalid Warrant [Docket No. 18].[1]

Assistant United States Attorney Tricia Tingle appeared on behalf of the Government. John Hughes, Esq., appeared on behalf of defendant Janice Mae Stepp, who was personally present. The matter was referred to the undersigned by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B).

---

[1]    In addition to the motion to suppress evidence, defendant had made a motion to suppress statements. [Docket No. 19]. At the hearing, defendant withdrew that motion. Tr. 5. Nevertheless, in her post-hearing brief, defendant took the position that defendant's statement, taken after the search of her residence, should be suppressed on grounds that it was the fruit of an illegal search. Def.'s Memo. at 10. As defendant had already withdrawn her motion to suppress statements, her post-hearing argument is of no avail. In any event, even if this motion was properly before this Court, it would be rejected in light of this Court's decision to deny the motion to suppress evidence.

Based upon the pleadings, testimony taken and exhibits submitted at the hearing on September 12, 2006, and the post-hearing submissions,[2] it is recommended that:

Defendant's Motion to Suppress Evidence Seized Pursuant to an Invalid Warrant [Docket No. 18] be **DENIED**.

## I.    FACTUAL BACKGROUND

Between the dates of February 25, 2006, and March 1, 2006, the Wayzata Police Department received a series of reports from retail businesses in Wayzata, Minnesota, regarding the passing of counterfeit United States currency.  During one of the incidents in which counterfeit money was proffered, a store employee of a Wayzata Holiday Store noted the Minnesota license plate number of the woman who had passed a counterfeit one-dollar note.   A vehicle registration check conducted by police indicated that the registered owner of the vehicle was a Novella Vera Gainey.   Employees from other stores involved in transactions in which counterfeit money was passed, identified Gainey from photo lineups as the person who presented the currency.  Two counterfeit bills were passed during one such transaction at Wolf's Pharmacy on February 27, 2006.  The owner of Wolf's Pharmacy told Wayzata Police that Gainey had been a customer in the pharmacy that day, and that Gainey worked as a home care aide for Janice Stepp of XXX XXXXX in Wayzata.

---

[2]    At the conclusion of the hearing, this Court gave each party the opportunity to submit a brief arguing their respective positions.   After receipt of the Government's responsive brief, defendant filed a reply without permission from the Court to do so. The Government then requested permission to respond to the reply.  As the Court had already decided to deny defendant's motion, the Court informed counsel for the Government that no further submissions would be permitted.  In the future, counsel for defendant is reminded that he must seek permission from the Court prior to submitting additional filings, and the Court will not review any unsolicited filings unless such permission has been granted prior to submission.

Wayzata Police obtained a search warrant for the residence of Gainey on March 6, 2006, and executed the warrant on March 14, 2006.  No counterfeit currency was found during the search; however, Gainey was present during the execution of the warrant and answered questions from the police in a recorded, post-<u>Miranda</u> interview. She was also interviewed on March 15, 2006, in a non-custodial setting.

During the March 14 interview, Gainey admitted to passing counterfeit money at various commercial establishments in Wayzata and Eden Prairie, Minnesota.  She also admitted to depositing a counterfeit twenty-dollar note at the First National Bank of the Lakes in Orono, Minnesota.  After speaking with an official at the bank, the police discovered that a counterfeit twenty-dollar note had been deposited into an account belonging to Stepp.

During the March 15 interview, Gainey admitted depositing the counterfeit twenty-dollar note into Stepp's account, identified Stepp from a driver's license photograph shown to her by police, and stated that Stepp was the one who had given her the counterfeit money.  Gainey also told police that Stepp was producing the counterfeit money at her residence at XXX XXXXX in Wayzata, that she had seen Stepp in possession of what she believed to be counterfeit money, and that she saw a printer in the living room of Stepp's residence that she believed to be used in the printing of the counterfeit money.

Following this interview, police prepared an application and an accompanying affidavit for a search warrant for the residence of Stepp, located at XXX XXXXX in Wayzata, Minnesota.  The warrant was signed on March 15, 2006, by Hennepin County District Court Judge Denise Reilly, and executed that same evening.  Upon executing

the warrant, officers seized counterfeit currency and equipment used to make counterfeit currency.

On June 20, 2006, Stepp was named in a twelve-count indictment charging her with manufacturing counterfeit U.S. currency and with possessing counterfeit U.S. currency.   Stepp now challenges the March 15, 2006 search warrant for lack of probable cause, and moves the Court to suppress evidence seized during the execution of the search warrant.

## II.   DISCUSSION

Stepp argued that the search warrant is invalid on several grounds.   First, she asserted that because the affidavit accompanying the search warrant was insufficient on its face to support a finding of probable cause, any evidence seized pursuant to the warrant should be suppressed.   Second, at the hearing and in her reply, Stepp submitted that she was entitled to a hearing under Franks v. Delaware, 438 U.S. 154 (1978), because the affidavit submitted by Lieutenant Murphy to Judge Reilly in support of the search warrant omitted that Gainey had a criminal history and that Gainey had made false statements and changed her story between her March 14 and 15 interviews. Third, Stepp contended that the good faith exception, permitting an otherwise invalid search warrant to be upheld if it was executed by an officer acting in objective good faith on a warrant issued by a judge or magistrate, was not applicable to the case at hand. See United States v. Leon, 468 U.S. 897 (1984).

### A.   Probable Cause Determination

Ordinarily, searches pursuant to a warrant are reviewed to determine if there was probable cause for the search in the search warrant application and affidavit.   Illinois v.

4

Gates, 462 U.S. 213, 236 (1983).  "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place."  United States v. Fladten, 230 F.3d 1083, 1085 (8th Cir. 2000).  The task of a court issuing a search warrant is "simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit. . . including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  Gates, 462 U.S. at 238.  In reviewing this decision of the issuing court, the duty of the reviewing court is simply to ensure that the issuing court had a substantial basis for concluding that probable cause existed.  Id. at 238-39 (citation omitted); United States v. LaMorie, 100 F.3d 547, 552 (8th Cir. 1996) ("Our duty as the reviewing court is to ensure that the issuing judge had a 'substantial basis' for concluding that probable cause existed, and we owe substantial deference to the determination of probable cause by the issuing judge." (citation omitted)).

As to what this Court should consider when reviewing a search warrant for probable cause, "[w]hen the [issuing judge] relied solely on the affidavit presented to him, 'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'"  United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005) citing United States v Etheridge, 165 F.3d 655, 656 (8th Cir. 1999) (quoting United States v. Gladney, 48 F.3d 309, (8th Cir. 1995)).  "When the affidavit is based on information from an informant, the informant's reliability, veracity, and basis of knowledge are relevant to whether the affidavit provided probable

cause to support the search." Solomon, 432 F.3d at 827 (citing United States v. LaMorie, 100 F.3d 547, 553 (8th Cir. 1996)).

The warrant at issue was applied for and signed by Judge Reilly of Hennepin County District Court, on March 15, 2006, and executed on the same day. This warrant for XXX XXXXX, Wayzata, Minnesota, sought counterfeit United States currency, including but not limited to twenty-dollar notes with serial numbers of EL63505628E, GI01839937A, and EB22183986G, and one-dollar notes with the serial number of L13445534D; products and materials used in the production of counterfeit currency; publications and articles related to the manufacturing of counterfeit currency; and items of identification to establish residency at the premises to be searched and constructive possession of the items that were the object of the search. See Govt. Ex. 1. The relevant portions of the affidavit accompanying the search warrant described the basis for the warrant as follows:

- Wayzata Police received a series of reports from retail businesses in Wayzata regarding the passing of counterfeit United States currency between the dates of February 25, 2006, and March 1, 2006. The counterfeit notes included twenty-dollar bills with serial numbers of EL63505628E, GI01839937A, and EB22183986G, and a one-dollar bill with a serial number of L13445534D.

- An employee of a Wayzata Holiday store obtained the Minnesota license plate number of a black female who reportedly passed the counterfeit one-dollar note on February 26, 2006. Registration checks conducted with the Minnesota Department of Public Safety showed that the registered owner of the vehicle was Novella Vera Gainey.

- Store employees involved in the counterfeit transactions identified Gainey from photo lineups as the person who presented a counterfeit twenty-dollar bill at the Wayzata Auto Center on February 25, 2006, and the counterfeit one-dollar bill at the Wayzata Holiday Store on February 26, 2006.

- Eden Prairie Police also received reports of a black female offering counterfeit twenty-dollar notes with the serial number of GI01839937A at a Krispy Kreme store and at a Jerry's Foods store on February 27, 2006.

- Also on February 27, 2006, two more counterfeit twenty-dollar notes were passed at Wolf's Pharmacy in Wayzata.  Those twenty-dollar notes had the same serial number as the twenty-dollar notes passed at Krispy Kreme and Jerry's Foods.

- Wayzata Police learned from staff at Wolf's Pharmacy that Gainey had been a customer of the store on February 27, 2006.  The owner of Wolf's Pharmacy, Mark Wolf, told Wayzata Police that Gainey worked as a home care aide for Janice Stepp of XXX XXXXX in the City of Wayzata .

- Checks with the Minnesota Department of Public Safety showed a driver's license entry for a Janice Mae Stepp, with a home address of XXX XXXXX in Wayzata.  Wayzata Police records also showed a prior contact with Janice Stepp at the XXX XXXXX address during November of 2005.

- During drive-bys of XXX XXXXX during March of 2006, a vehicle registered to Gainey was parked in front of XXX XXXXX, along with a vehicle registered to Janice Stepp parked in the driveway of the address.

- Based upon information available in the case as of March 6, 2006, a search warrant for the residence of Gainey was presented to and signed by Judge Scherer of Hennepin County District Court on March 6, 2006, and executed on March 14, 2006.  No counterfeit currency was discovered during the execution of the warrant; however, Gainey was present and answered questions in a recorded, post-<u>Miranda</u> interview with the affiant officer.  Gainey was also interviewed, in a non-custodial setting, on March 15, 2006.

- During both the March 14 and March 15 interviews, Gainey confirmed offering twenty-dollar notes that she knew to be counterfeit at locations including the Wayzata Holiday station, the KFC restaurant in Wayzata, and the Krispy Kreme store in Eden Prairie.  She also admitted to depositing a counterfeit twenty-dollar bill during a deposit at First National Bank of the Lakes in the City of Orono on March 14, 2006.

- The affiant officer spoke with Julie Renner, Vice President of the First National Bank of the Lakes, and confirmed that a black female included a counterfeit twenty-dollar bill with serial number GI01839937A in a deposit made on March 14, 2006, into the account of Stepp.

- Also during the non-custodial interview with the affiant officer on March 15, 2006, Gainey stated that she obtained the counterfeit bills from Stepp, a female she had known for a number of years who currently resides at XXX XXXXX in Wayzata, and from a male associate of Stepp's known as Stance (correct spelling unknown).  Gainey positively identified Stepp from a current driver's license photo shown to her by the affiant officer.  Gainey also gave a physical description of Stance.

- Gainey stated that Stepp provided the counterfeit money to her for money Stepp owed her for work related to a used auto sales business that Stepp operates.  Gainey also stated that Stepp had verbally represented to her  that she began producing the counterfeit currency during late February of 2006, and that Stepp participated in the counterfeit operation with her associate named Stance.  Gainey indicated that it was her understanding that at least some of the counterfeit manufacturing was conducted in Stepp's Wayzata residence.  Gainey reported that she had visited Stepp at XXX XXXXX as recently as March 14, 2006, and witnessed Stepp in possession of a stack of currency about two to three inches thick, containing twenty-, fifty-, and one hundred-dollar denominations, that Gainey believed to be counterfeit.  Gainey also reported seeing on the afternoon of March 14 a printer in the living room of Stepp's residence.  Gainey indicated that in the recent past she had seen Stepp compare copies of counterfeit currency she produced to actual currency notes from which the counterfeit bills were derived.  Gainey also related a recent conversation she had with Stepp in which Stepp indicated she planned on getting someone to purchase a car for her using the counterfeit money, and then selling the vehicle.

- The affiant officer conducted a criminal history check of Stepp, finding that she had been arrested in Clay County, Florida, on 7/9/91 for Resisting an Officer, Interfering with Exec Process and Fleeing/Eluding an Officer, and that Stepp was also charged with Unemployment Benefits – False Representations in Ramsey County, Minnesota, on 5/10/05.

Id.

　　　　Citing to United States v. Gibson, 928 F.2d 250 (8th Cir. 1991), Stepp argued that the  search  warrant  should  be  suppressed  because  the  supporting  affidavit  was based on an informant with no prior record of reliability, and the police only corroborated some very minor, innocent details which were insufficient to establish probable cause. This Court disagrees.

In Gibson, probable cause for a search warrant was found not to exist[3] where police had no information about the reliability of an anonymous tipster who had called police and reported her observations of cocaine and about $30,000 in cash at defendant's residence, and the information corroborated by police related only to innocuous details.    However, Gibson is distinguishable from the present case for several reasons.   First, unlike Gibson where the tipster was anonymous, here, the police had spoken to the known informant, Gainey, in person, on more than one occasion.  Consequently, in LaMorie, where the Eighth Circuit upheld a search warrant based on its finding that the informant was credible and reliable, the Court of Appeals found it significant that the case did not involve "a confidential informant, an anonymous letter, or some other situation in which the potentially unreliable information first alerts law enforcement to illegal activity."  LaMorie, 100 F.3d at 553.  See also, Solomon, 432 F.3d at 827 (finding informant's tip was credible and reliable because she met with law enforcement and could be held responsible if her allegations turned out to be fabricated) (citation omitted).  Like LaMorie and Solomon, Gainey met with police, giving them the opportunity to personally assess her credibility.

Second, this case does not present a situation where the police were first alerted to the crime by an anonymous source or by a confidential informant; police were already aware that counterfeit currency was circulating in Wayzata and Eden Prairie because of the incidents reported by the stores involved in the transactions.  See LaMorie, 100 F.3d

---

[3]     Despite the finding of no probable cause to support the search warrant, the Court of Appeals upheld the search based on the Leon exception.  See Gibson, 928 F.2d at 253-54.

at 554 (noting the importance that officials were already aware of the crime and had been investigating it).

Third, while Gainey may not have had a prior record of reliability, the credibility and reliability of an informant are not "separate and independent requirements to be rigidly exacted in every case." Gates, 462 U.S. at 230. The totality of the circumstances standard set forth in Gates permits, "for example, an informant's clear basis of knowledge could be balanced against, rather than automatically overruled by, that informant's lack of a 'track record' of reliability." United States v. Reivich, 793 F.2d 957, 959 (8th Cir. 1986) (emphasis added). See also, Solomon, 432 F.3d at 827 (citing United States v. Jackson, 898 F.2d 79, 81 (8th Cir. 1990) (finding adequate basis of informant's knowledge where anonymous informant's tip provide the "richness and detail of a first hand observation")). Gainey had an established basis of knowledge in this case and provided detailed information to police. She knew Stepp personally. She admitted, against her own interest, possessing and passing the counterfeit money. See LaMorie, 100 F.3d at 553 (statements against the penal interest of an informant carry considerable weight in determining credibility). She admitted that she obtained the counterfeit money from Stepp. Finally, she had specific knowledge of the existence of the counterfeit money and the printer in Stepp's home because she had personally observed these items at this location one day prior to the issuance and execution of the search warrant. See Solomon, 432 F.3d at 827 (finding sufficient probable cause where informant had personally discovered evidence of a crime and provided police with a detailed description). Gainey's information was timely and based on first-hand

observation, and it is clear that she had a basis of knowledge regarding the alleged crimes.

Fourth, even if the Court were to agree with Stepp that the police only corroborated innocuous details, as a preliminary matter, this would not end the analysis. "The corroboration of minor, innocent details can suffice to establish probable cause." United States v. Tyler, 238 F.3d 1036 (8th Cir. 2001) (quoting United States v. Ramos, 818 F.2d 1392, 1397 n. 7 (8th Cir. 1987)). See also United States v. McBride, 801 F.2d 1045, 1047 (8th Cir.1986) ("even in cases involving the higher degree of reliability needed to establish probable cause, it is immaterial that the details corroborating an informant's tip are as consistent with innocent conduct as with illegal activity"), cert. denied, 479 U.S. 1100, 107 S.Ct. 1325, 94 L.Ed.2d 177 (1987); Reivich, 793 F.2d at 960 ("it is not necessary to a finding of reliability that the corroboration extend to illegal activity as well as to innocent details"). In fact, notwithstanding its finding of no probable cause to support the search warrant, the Gibson court noted that its holding was limited to the facts of the case, and the decision should not be construed as suggesting that an informant's tip could never be corroborated by innocent details. See Gibson, 928 F.2d at 253 n. 3 (stating "[e]ach case must be evaluated according to its particular facts.").

In this case, the information corroborated by the police went far beyond minor or innocent details. The affidavit presented information regarding Stepp that was obtained before the police executed the search warrant on Gainey's residence and spoke with her. Prior to interviewing Gainey, Wayzata police learned from Wolf's Pharmacy that Gainey was employed as a caregiver by Stepp, and obtained Stepp's address of XXX XXXXX from the owner of the pharmacy. The police then checked that address against

Department of Public Safety records and discovered it matched a driver's license entry for Stepp.  This information was obtained independently of the information imparted by Gainey during her interviews on March 14 and 15, 2006.  After interviewing Gainey, police learned that on March 14 that she had made a bank deposit at First National Bank of the Lakes in Orono that included a counterfeit twenty-dollar note.  The police subsequently spoke with an employee at First National Bank of the Lakes in Orono, and learned from her, not from Gainey, that the deposit containing the counterfeit note had been put into an account belonging to Stepp.  During drive-bys of XXX XXXXX, police noted that Gainey's car was parked in front, in addition to a car registered to Stepp parked in the driveway, thus, linking Gainey and Stepp together.  Finally, the police conducted a criminal history check of Stepp in an effort to obtain further information, and learned that she had previously been charged in Ramsey County, Minnesota, with Unemployment Benefits – False Representations, another crime involving monetary deceit.  The corroborating information obtained by the police in this case achieved more than simple verification of Stepp's address and physical description; it tied Stepp to the criminal activity engaged in by Gainey.   The corroborating information obtained by police, combined with Gainey's statements, established probable cause to believe that contraband or evidence of a crime would be found at Stepp's residence.

Given all of this information, a reasonable person could conclude that there was evidence of a crime located at  XXX XXXXX in Wayzata .  The affidavit set forth facts establishing the connection between the counterfeit currency and Stepp, and the likelihood that the materials sought by the search warrant would be found at Stepp's residence.   Therefore, like the courts in Solomon, LaMorie, and United States v.

Murphy, 69 F. 3d 237 (8th Cir. 1995),[4] based upon the totality of the circumstances, this Court finds that substantial evidence existed to support the finding of probable cause to issue the search warrant for the items described at the location of XXX XXXXX.

**B.   Franks Challenge**

Stepp alternatively argued that even if this Court found that the search warrant was based on probable cause, the evidence seized pursuant to the warrant should still be suppressed because it was obtained in violation of the principles set forth in Franks v. Delaware, 438 U.S. 154 (1978).   In this regard, Stepp asserted that the search warrant for XXX XXXXX should be invalidated because Lieutenant Murphy, the affiant to the search warrants, failed to disclose to Judge Reilly that Gainey had a criminal history that included charges in New York State of Possession of Forged Instruments, Grand Larceny, Criminal Possession of Stolen Property and Conspiracy, and felony convictions in Minnesota for Aiding and Abetting Theft and Wrongfully Obtaining Public Assistance.   Stepp further maintains that Lieutenant Murphy omitted in his affidavit that Gainey was believed to be lying or telling half-truths to him, and that Gainey's story had

---

[4]      In Solomon, a search warrant was deemed to contain sufficient probable cause where the known informant had a strong basis of knowledge of the crime because she had personally observed the activity, had provided a detailed description to police, and the information was corroborated by law enforcement.   In LaMorie, a search warrant was upheld based on information provided by a known informant who was found to be credible and reliable because she had participated in the crime and had a basis of knowledge for the information she had provided to law enforcement.   In Murphy, an informant told police that Murphy possessed illegal weapons, along with Murphy's address and the fact that Murphy had recently been released from prison.   The police corroborated only two facts, the residential address and prison release date of Murphy. The warrant was executed, and Murphy challenged the sufficiency of the probable cause to issue the warrant.   The Eighth Circuit recognized the nature of the affidavit as "bare bones," but nonetheless found it sufficient to establish probable cause under the facts of the case.

changed drastically between her interviews on March 14 and March 15.   The Government argued that the omitted information was not material to a finding of probable cause, and that even if the information had been included in the affidavit, probable cause would still be established.[5]

"Under the Fourth Amendment, law enforcement officers may not obtain a search warrant through statements which are intentionally or recklessly false." United States v. Hollis, 245 F.3d 671, 673  (8th Cir. 2001) (citation omitted).  An evidentiary  hearing to determine whether to invalidate a search warrant will only be granted if there is an offer of proof that: (1) the supporting affidavit contains false information or an omission that was intentionally or recklessly included or excluded; and (2) the omission of the offending portion in the warrant affidavit negates a finding of probable cause. Franks v. Delaware, 438 U.S. at 171-72; see also United States v. Underwood, 364 F.3d 956, 964 (8th Cir. 2004) (A "defendant is entitled to a Franks hearing if he makes a substantial preliminary showing that a false statement was included in the warrant affidavit either intentionally or with reckless disregard for the truth and the information was necessary to the finding of probable cause.") (citation omitted).  Therefore, a defendant must satisfy two elements before the Court will invalidate a warrant under Franks.  First, the defendant must establish the existence of a false statement or deliberate omissions of material facts, which requires inquiry into affiant's state of mind.  See United States v. Wells, 223 F.3d 835, 838 (8th Cir. 2001) (citing United States v. Humphreys, 982 F.2d

---

[5]     Despite the Government's objection and the Court's skepticism that Stepp had made an adequate showing to warrant a Franks hearing, in an abundance of caution, this Court allowed the questioning of Lieutenant Murphy to go forward regarding the omissions in his affidavit as this questioning also bore on Stepp's contention that the Leon good faith exception would not save the search warrant.

254, 259 n.2 (8th Cir. 1992), cert. denied, 510 U.S. 814 (1993)); Reivich, 793 F.2d at 960-61 (providing that Franks has been extended to allow challenges to affidavits based on alleged deliberate omissions) (citing United States v. Dennis, 625 F.2d 782 (8th Cir. 1980)).  Second, the defendant must show that the affidavit, minus the false statement or omission, would have been insufficient to establish probable cause for the search. See Wells, 223 F.3d at 838; Reivich, 793 F. 2d at 961.

While it is true that Lieutenant Murphy's affidavit omitted the criminal record of Gainey, the fact that he believed Gainey to be lying and telling half-truths after the first interview, and that Gainey's story had changed from one interview to the next, Stepp's Franks challenge fails.  As an initial matter, this Court finds that the omission of Gainey's criminal history was not material.  See e.g., United States v. Flagg, 919 F.2d 499, 501 (8th Cir. 1990) ("[A] magistrate generally would not be misled by the alleged omission of facts in this case because informants frequently have criminal records...."); see also United States v. Parker, 836 F.2d 1080, 1083 (8th Cir. 1987).  Under Stepp's theory, law enforcement officers could never reasonably rely on an informant who has a criminal history.  If this were the rule, then use of informants by law enforcement would be severely hampered, given that many informants have criminal records or are unsavory characters.  See generally, United States v. King, 351 F. 3d 859, 868 (8th Cir. 2003) ("We do not dispute that it was quite likely that Kingsley's character was flawed, but we recognize, like the magistrate judge did, that the use of unsavory informants is quite often the nature of the beast in police investigations.").  Further, Lieutenant Murphy's affidavit made it clear that Gainey had admitted during the course of the investigation, to passing counterfeit money.  Judge Reilly was therefore already aware

that Gainey was not a model citizen.  See LaMorie, 100 F.3d at 555 (omission of informant's criminal history from the affidavit was found not to be material where police disclosed informant's participation in the crime in the affidavit).

Similarly, failure to include Lieutenant Murphy's belief that Gainey was lying or telling half-truths at certain points during her interviews with him, or that Gainey had changed her story in the second interview from the first interview, was not a material omission.[6]  During any ongoing investigation, it is to be expected that law enforcement will gather a number of different pieces of information before they seek a search warrant.  For example, during any given investigation, police may speak to informants, receive tips, interview witnesses, examine records, make personal observations and obtain information in a variety of other ways that necessitate reliance on outside sources.  Police then work to corroborate the information they receive, and armed with new information, they may go back to various sources for more facts.  Those sources may then change what they had previously given to law enforcement based on this new information.  At the end of the day, it is law enforcement's job to ferret out truth from fiction, and they are not expected to include every nuance, twist and turn, and false start they encounter in a search warrant application and affidavit.  What they are expected to include in the supporting affidavit are sufficient facts to support their belief that it is likely

---

[6]     The Court does not agree that with Stepp's characterization that Gainey had changed her story between the two interviews.  It is true that Gainey did implicate only Stance as the source of the counterfeit money in the March 14 interview.  Ex. 2a at pp. 2-5.  In the March 15 interview, however, after being questioned about the deposit of the $20 bill in Stepp's bank account at First National Bank of the Lakes, she then implicated both Stance and Stepp.  Ex. 3a at p. 2.  The rest of her statements in the second interview were consistent with the first interview, except that she provided detailed information in the second interview about both Stance and Stepp.

that contraband or evidence of a crime will be found in a particular place.  That is what Lieutenant Murphy did here.  The fact that Gainey may have lied, told half-truths or changed her story as his investigation progressed, does not amount to a material omission.

Further, Stepp has not established that the omissions were intentionally or recklessly made by Lieutenant Murphy.  "The defendant bears the burden of proving by a preponderance of the evidence that the affiant intentionally or recklessly included false statements in a warrant affidavit."  United States v. Gipp, 147 F.3d 680, 688 (8th Cir. 1998) (citing United States v. Garcia, 785 F.2d 214, 222 (8th Cir.), cert. denied, 475 U.S. 1143, 106 S.Ct. 1797, 90 L.Ed.2d 342 (1986)); see also United States v. Clapp, 46 F.3d 795, 799 (8th Cir. 1995) (citations omitted); United States v. Tisdale, 248 F.3d 964, 973 (10th Cir. 2001) (applying the same burden of proof with regards to omissions). The Eighth Circuit has held that the test for determining whether an affiant's omissions or false statements were made with reckless disregard for the truth is "whether, viewing all of the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." Clapp, 46 F.3d at 801 (citation omitted).  Rather than impose an objective standard for determining whether an affiant has recklessly disregarded the truth, the Court looks to what the affiant "believed or appropriately accepted" as true.  Id. at 800 (quoting United States v. Leuth, 807 F.2d 719, 726 (8th Cir. 1986) (citations omitted)).

When asked why he included Gainey's criminal history in his search warrant application for Gainey's residence, but not for Stepp's residence, Lieutenant Murphy stated that he normally included the criminal history of the target of the warrant, and that

17

it was routine for officers in his department to include the criminal history of the target of a warrant when preparing an affidavit and search warrant application. Tr. 54. He further stated that he did not include Gainey's criminal history in his warrant application for XXX XXXXX because that warrant was not for Gainey's residence. Tr. 56. Additionally, Lieutenant Murphy pointed out that the affidavit that he presented to Judge Reilly included information that Gainey had made incriminating statements about her recent criminal behavior. Tr. 52.

Lieutenant Murphy further testified that he felt that Gainey was giving him partial truths in her first interview on March 14, but that he believed that she was giving much more complete truths in her interview on March 15. Tr. 48. Further, law enforcement had confirmed some of the information given to them by Gainey during her first interview. Tr. 57. An officer "may rely upon information received through an informant...so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge," Gates, 462 U.S. at 241, (quoting Jones v. United States, 362 U.S. 257, 269, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)).

The test is the subjective intent of the affiant officer, not an objective standard. Clapp, 46 F.3d at 800. At worst, it was negligent for Lieutenant Murphy to omit from his affidavit Gainey's criminal history or her conduct during the interviews. "However, Franks is limited to cases of perjurious or recklessly false statements or omissions made by a police officer in support of a warrant; the rule does not apply to negligent misrepresentations or omissions." United States v. Schmitz, 181 F.3d 981, 986 (8th Cir. 1999) (citation omitted). The Court finds that Lieutenant Murphy's omissions were not intentional or reckless in nature.

18

Lastly, with respect to the second prong of the Franks test, even if it had found that the omissions in the affidavits were made intentionally or recklessly by Lieutenant Murphy, this Court concludes that the omissions would not have affected Judge Reilly's finding of probable cause to issue the search warrant.  As discussed above, Judge Reilly was fully aware that some of the information in the affidavit had been obtained from an individual who had already admitted to participating in the crime of passing counterfeit currency.  Knowledge of the balance of Gainey's criminal history would not have affected Judge Reilly's view of Gainey or her finding of probable cause.  With regard to Lieutenant Murphy's belief that Gainey was lying and telling half-truths during her first interview, inclusion of that information also would not have altered Judge Reilly's finding of probable cause.  Inclusion of the omitted information would only go to Gainey's reliability and credibility, which this Court has already found to be sufficient considering the corroboration of details and the firsthand basis of Gainey's knowledge. See Marvin v. United States, 732 F.2d 669 (8th Cir. 1984) (probable cause would not have been lacking had omitted information that pertained only to credibility and reliability of informant been presented to the issuing magistrate).

In conclusion, this Court finds that none of the omissions regarding Gainey negate the fact that the information provided by her was reliable and verified by law enforcement officers.  Therefore, Stepp's motion to suppress evidence seized based on the omissions in Lieutenant Murphy's application and affidavit for search warrant should be denied.

## C.      The Leon Exception

Under the "good faith" exception established in United States v. Leon, 468 U.S. 897, 922 (1984), even if a supporting affidavit is not sufficient to establish probable cause, the evidence obtained pursuant to the search warrant is still admissible if the officers executing the warrant reasonably relied upon the warrant.   That is the case here.

In Leon, the Court found four instances when suppression remained appropriate. First, suppression is appropriate "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth."   Leon, 468 U.S. at 923. Second, suppression is appropriate "where the issuing magistrate wholly abandoned his judicial role in the manner condemned in Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979); in such circumstances, no reasonably well trained officer should rely on the warrant."   Id.   Third, the Court found that an officer would not "manifest objective good faith in relying on a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'"   Id (quoting Brown v. Illinois, 422 U.S. 590, at 610-611, (Powell, J., concurring in part).   Finally, the court found that "depending on the circumstances of the particular case, a warrant may be so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid."   Id.   See also, Marion, 238 F.3d at 969 (discussing four situations identified in Leon in which an officer's reliance on a warrant would be unreasonable); Simpkins, 914 F.2d at 1057 (same).   Consequently, "[u]nder Leon, . . .

20

the exclusionary rule will not bar evidence obtained pursuant to an invalid search warrant unless the [judge] who issued the warrant abandoned his or her neutral and detached role in issuing it, or unless 'the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.'"   United States v. Tellez, 217 F.3d 547, 550 (8th Cir. 2000) (quoting Leon, 468 U.S. at 926).   When assessing the objective good faith of officers executing a warrant, the totality of the circumstances must be considered.  Id.

Stepp contended that, based on Lieutenant Murphy's omission of information and his reliance on a warrant lacking in probable cause, the first and third exceptions to Leon are applicable in this case, and that Leon therefore does not apply.  This Court disagrees.

The Leon good faith exception will not apply where "the issuing judge is misled by information in the affidavit the affiant knows or should know is false."  Leon, 468 U.S. at 923.  Reliance on a warrant is also objectively unreasonable if an officer has reason to know that the warrant was obtained through misrepresentations or omissions.  United States v. Koons, 300 F.3d 985, 991 (8th Cir. 2002).  Stepp asserted that because Lieutenant Murphy omitted Gainey's criminal history, the fact that he believed she had lied or told half-truths, and that she had changed her story from her first interview to her second, Judge Reilly was misled by the affidavit.  For all of the same reasons that this Court rejected Stepp's Franks challenge, the Court finds that Judge Reilly was not misled by the fact that the omitted information was not included in Lieutenant Murphy's affidavit.

The Leon good faith exception will also not apply where "the affidavit is so

lacking in probable cause that it is objectively unreasonable for the officer to rely on it." Leon, 468 U.S. at 923.  Stepp argued that the affidavit was a bare bones affidavit and provided so little indicia of probable cause that Lieutenant Murphy could not have held an objectively reasonable belief in its sufficiency.  "A bare bones affidavit is one that relies on uncorroborated tips or mere suspicion." Koons, 300 F.3d at 991.  Again, Stepp asserted that the corroboration only related to innocent facts, but as discussed above, the Court has already determined that the corroboration related to more than innocent or minor facts and that Gainey was a credible informant who provided detailed information regarding Stepp's involvement.  See also Murphy, 69 F.3d at 240 (affidavit that was "bare bones at best" was not uncorroborated and sufficient to support a finding of probable cause).

In summary, even if this Court had determined that the search warrant of Stepp's residence lacked probable cause, the good-faith reliance on the issuance of the search warrant by Judge Reilly, validates the search.

## **RECOMMENDATION**

For the reasons set forth above, it is recommended that:

1.     Defendant's Motion to Suppress Evidence Seized Pursuant to an Invalid Warrant [Docket No. 18] be **DENIED**.


Dated:          October 3, 2006


*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **October 13, 2006** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.